**Jennie S. BLEECKER, Plaintiff,**

v.

**STANDARD FIRE INSURANCE COMPANY, Defendant.**

**No. 5:99–CV–603–H 3.**

United States District Court,
E.D. North Carolina,
Western Division.

Oct. 23, 2000.

---

Odes L. Stroupe, Jr., Bode, Call & Stroupe, L.L.P., Raleigh, NC, Christie M. Foppiano, Bode, Call & Stroupe, Raleigh, NC, for Jennie S. Bleecker, plaintiff.

John R. Jolly, Jr., Poyner & Spruill, Raleigh, NC, Eric P. Stevens, Poyner & Spruill, Raleigh, NC, for The Standard Fire Insurance Company, defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on defendant's motion to dismiss plaintiff's state law claims for failure to state a claim, defendant's motion for summary judgment, and defendant's motion to quash plaintiff's request for a jury trial. Plaintiff motions the court to compel defendant to completely respond to discovery and award sanctions. Finally, defendant requests the court hear oral arguments on all pending motions. The parties have responded and these matters are ripe for adjudication.

### Statement of the Case

Plaintiff owns land and a sixty-year-old residential building located at 825 South Lumina Avenue, Wrightsville Beach, North Carolina ("Property"). On September 5, 1996, Hurricane Fran caused flood damage to the Property and the building's contents. On September 13, 1996, the Town of Wrightsville condemned the Property as "unsafe and dangerous."

The property was insured under a standard flood policy issued by the defendant, Standard Fire Insurance Company ("Standard Fire"), pursuant to the National Flood Insurance Act ("NFIA") of 1968. Plaintiff notified defendant of the flood damage. Defendant retained Colonial Catastrophe Claims Corporation ("Colonial") to adjust the claim.

Colonial assigned Jessie B. Parker ("Parker") to adjust the claim. Approximately one week after Hurricane Fran, Parker sent his stepson, David L. Babcock ("Babcock"), who was not an employee of Colonial or Standard Fire, to examine the flood damage. Despite seeing damage to the foundation, Babcock failed to ask plaintiff about the foundation damage or include the damage in the proof of loss form. (Babcock Dep. at 60–61).

Plaintiff prepared a list of damaged contents and submitted the replacement cost list to the defendant. Based on information obtained from Babcock and plaintiff's content replacement report, Parker estimated the cost of repair or replacement of the damaged property at $93,689.42. (Bleecker Dep., Ex. B). After Babcock adjusted the estimate for depreciation by $18,669.16 and a deductible of $1,500, Colonial presented plaintiff with a proof of loss for $71,712.49. (*Id.*). On October 30, 1996, plaintiff signed and returned to the defendant the proof of loss for $71,712.49. (Braham Dep., Ex. I).

Doug Braham ("Braham"), President of Colonial, reviewed the claim file and determined that the first proof of loss estimate was too high. (Braham Dep. at 19, ll. 7–16; *Id.* at 15, ll. 13–16; *Id.* at 55, ll. 13–23.) Defendant informed plaintiff that additional documentation was need to issue the $71,712.49 payment. (Bleecker Dep., Ex. C). Braham then reduced the first proof of loss statement by $31,733, and submitted to plaintiff a second proof of loss statement for the reduced amount. On November 18, 1996, defendant sent plaintiff a check for $41.787. Plaintiff, however, refused to cash the check or sign the second proof of loss statement. (*Id.* Ex. K)

Around the same time, plaintiff asserted to Colonial that she had discovered foundation damages to the residential building and asked for reimbursement for losses associated with these damages. Plaintiff asserts that defendant never inspected or investigated the foundation damages, but that she submitted photos of the damages to the defendant. It is uncontested that plaintiff did not submit a proof of loss claim containing the foundation damages.

Around October 1996, government authorities offered to provide, for a limited period, free debris removal services to Wrightsville Beach residents. Plaintiff decided to raze the existing structure and build a new one. Plaintiff asserts that she told Braham of her intent to tear down the existing structure, and asked Braham to inform her if defendant did not want her to demolish the structure. (Pl. Reply to Summ.J., Aff. of Robert Bleecker, ¶ 14; Aff. of Anthony E. Rand, ¶ 5). When she did not hear from defendant, plaintiff allowed government authorities to demolish the building in October 1996.

Negotiations between the parties continued sporadically until the middle of 1999. Colonial's involvement in the case ended, and employees of the Travelers Group began working on plaintiff's claim. On May 25, 1999, defendant informed plaintiff that it could not adjust plaintiff's claim for flood damage because she had demolished the building. (Pl.Complaint, ¶ 19). On June 15, 1999, plaintiff attempted to use the mandatory appraisal provision of the insurance policy, but defendant refused.

Plaintiff filed this action for breach of contract and unfair and deceptive trade practices on September 3, 1999. Plaintiff's claim for breach of contract which arises from a policy issued under the NFIA raises a substantial federal question, and thus jurisdiction over the contract claim is proper under 28 U.S.C. § 1331. *See Newton v. Capital Assurance Co., Inc.,* 209 F.3d 1302 (11th Cir.2000) (holding that contract claim under national flood insurance policy raises substantial federal question). Jurisdiction over plaintiff's state law claims is proper under supplemental jurisdiction. 28 U.S.C. § 1367.[1]

***Court's Discussion***

**I. National Flood Insurance Act**

To provide a proper context for the court's discussion, the court begins with a

---

1. While 28 U.S.C. § 4072 grants jurisdiction to federal courts over contract disputes when FEMA is the defendant, the court declines to decide whether § 4072 provides federal jurisdiction to courts for actions by claimants against private insurers. *See Van Holt v. Lib-* *erty Mutual Fire Ins. Co.,* 163 F.3d 161, 163, 167 (3d Cir.1998) (holding that action against private insurance company under NFIA is functional equivalent to action against FEMA). The court instead relies on tradition subject matter jurisdiction.

discussion of the history of national flood insurance. After determining that many factors made it "uneconomic for the private insurance industry alone to make flood insurance available ... on reasonable terms and conditions" to homeowners and businesses located on the coast and in flood plains, Congress in 1968 created the National Flood Insurance Act, 42 U.S.C. § 4001–4128, to provide subsidized flood insurance. *Id.* § 4001(b). In exchange, federal law requires local officials to adopt and enforce various flood plain management measures. *Id.* §§ 4002(b)(4), 4012(a), 4022; 44 C.F.R. §§ 60.2–60.7.

NFIA is administered by the Federal Emergency Management Agency (FEMA). Flood insurance may be issued directly through the FEMA or through Write–Your Own ("WYO") programs created by private insurers who sell and service federal flood insurance under their own name with the federal government acting as a guarantor and reinsurer. *Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998).[2] Regardless of whether FEMA or private insurers issue the policy, the federal treasury pays for insurance claims arising from flood insurance policies which exceed revenues from insurance premiums collected by WYO insurers. *See Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 165 (3rd Cir.1998).

## II. Breach of Contract Claim for Foundation Damages

### A. Standard of Review

Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *see Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *See Faircloth v. United States,* 837 F.Supp. 123, 125 (1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

### B. Substantial Compliance and Estoppel

Federal common law governs federal flood insurance policies. *Leland v. Federal Ins. Adm'r,* 934 F.2d 524, 529 (4th

---

2. NFIA provides two alternative structures for implementing the flood insurance program. NFIA was initially implemented through an associated pool of private insurers under Part A. 42 U.S.C. §§ 4051–4052. In 1977, programs under Part A were discontinued, and pursuant to Part B, 42 U.S.C. § 4071, the federal government assumed full control of the program and began issuing the policies through the federal government. In 1983, FEMA pursuant to its regulatory authority created the "Write Your Own Insurance" program which allowed private insurers to issue standard flood insurance policies in their own names. 44 C.F.R. § 62.23–24. *See generally Flick v. Liberty Mut. Fire Ins.,* 205 F.3d 386, 387–89 (9th Cir.2000) (detailing history of NFIA).

Cir.1991). Courts generally require claimants to strictly comply with policy terms to recover under federal flood insurance policies. The standard flood insurance policy issued to the plaintiff provides that as soon as a flood loss occurs to insured property, the claimant must "[w]ithin 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy." *See* 44 C.F.R. pt 61 app. A(1), art. 9(J).

 Claimants are not allowed to recover under a flood insurance policy unless they submit sworn proof of loss statements within sixty days after a flood-related claim arises. *Id.* Most courts strictly enforce the time deadline. *See, e.g., Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir. 1998); *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13, 18–19 (1st Cir.1986). *But see West Augusta Development Corp. v. Giuffrida,* 717 F.2d 139, 141 (4th Cir.1983) (leaving open question of whether estoppel could be asserted against government when plaintiff did not meet time deadline). The issue presented in this case is whether a plaintiff who submits a timely claim form, but does not include all the damages, can seek a larger claim amount after the sixty day period. The court determines that a proof of loss statement must contain a timely and complete statement of losses incurred for a claimant to obtain full recovery for losses covered by a federal flood insurance policy.

 The standards governing insurance programs administered by private insurers are different from the standards governing insurance programs administered by the federal government. Unlike state courts which typically apply a "notice-prejudice" or substantial compliance rule, federal courts do not allow policyholders who give late notice of losses to recover under federal flood insurance policies even if the government is not prejudiced by the late notice. This requirement stems from the Appropriations Clause of the United States Constitution which provides that "No Money shall be drawn from the Trea-

sury, but in Consequences of Appropriation made by Law." U.S. Const. art I, § 9, cl. 7. Consequently, most courts require claimants to strictly comply with congressional and regulatory requirements in order to recover under federal programs.

In *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the United States Supreme Court addressed the question of whether the federal government could prevent a federal employee from recovering disability benefits when the employee had received erroneous advice from a federal official that resulted in the employee exceeding the statutory earning limit. *Id.* 415–18, 110 S.Ct. 2465. The Court concluded that the Appropriations Clause prevents the judiciary from ordering officials to expend money from the federal treasury in a manner not authorized by Congress. *Richmond,* ·496 U.S. at 424–34, 110 S.Ct. 2465. The Court reasoned that public funds must "be spent according to the letter of the difficult judgments reached by Congress ... and not according to ... the individual pleas of litigants." *Id.* at 428, 110 S.Ct. 2465.

In this case, plaintiff seeks to recover for foundation damages to her property which were not included in her proof of loss statement. It is undisputed that any extra recovery under the flood insurance policy would ultimately come from the pockets of the United States Treasury. In addition, federal regulations require that the provisions of a flood insurance policy not be waived, altered, or varied without the express written consent of the Federal Insurance Administrator. 44 C.F.R. § 61.13(d). Allowing claimants to recover for losses not originally included in timely filed proof of loss statements would require FEMA to expend federal funds in a manner contrary to NFIA regulations. The court concludes that claimants under NFIA may only recover for the damages included in a timely filed proof of loss claim.

■ In a similar argument, plaintiff argues that defendant materially breached the federal flood insurance policy and argues that the contract should be rescinded. Plaintiff does not cite any cases to support its assertion that the court should enforce the contract against the federal government because of the acts of the defendant. Plaintiff's argument, however, is analogous to equitable estoppel claims in which courts consistently hold that claimants cannot use equity to prevent the federal government from insisting on strict compliance with proof of loss requirements. *See Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 387 (9th Cir.2000); *Wagner v. Director, Fed. Emergency Management Agency,* 847 F.2d 515, 518–19 (9th Cir. 1988). "[N]ot even the temptations of a hard case" may provide a basis for recovery that is contrary to federal regulations. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 386, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (holding that farmers who did not comply with federal regulations because of misrepresentation by government agent could not recover). The court concludes that plaintiff cannot use equity to prevent the federal government from requiring strict compliance with flood insurance policy requirements.

## III. Preemption

In addition to claims under contract, plaintiff alleges that Standard Fire violated North Carolina's Unfair Trade Practices Act, N.C.Gen.Stat. § 58–63–15. In response, Standard Fire argues that the court should dismiss plaintiff's tort claim because NFIA preempts all state law claims. As discussed below, the court finds that NFIA does not preempt plaintiff's state law tort claims.

### A. Standard of Review

■ In reviewing a motion to dismiss, the court should view the allegations of the complaint in the light most favorable to the plaintiff. *See De Sole v. United States,* 947 F.2d 1169 (4th Cir.1991). The court must accept the factual allegations of the complaint but is not bound with regard to its legal conclusions. *See District 28, United Mine Workers, Inc. v. Wellmore Coal Corp., et al.,* 609 F.2d 1083, 1085 (4th Cir.1979). Plaintiffs are entitled to reasonable inferences by the court in ruling on a motion to dismiss. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56 (4th Cir.1993). Motions to dismiss are granted only where the plaintiff can not prove any set of facts which would entitle him to relief. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130 (4th Cir.1993).

### B. Preemption

■ Under the Supremacy Clause, state laws and regulations may be preempted in one of three ways: express preemption, conflict preemption, or field preemption. *English v. General Electric Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Preemption is primarily a question of congressional intent *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 483–84, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Particularly when an area is traditionally regulated under state police power, the party claiming that federal law preempts state law claims bears the burden of proof. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

■ Defendant does not seriously assert that NFIA expressly preempts plaintiff's state law claims. *See Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793, 797 n. 20 (5th Cir.1993). Instead, defendant asserts that plaintiff's state law claim is preempted by field and conflict preemption. Conflict preemption applies if the state law actually conflicts with federal law or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of a federal statute. *General Electric,* 496 U.S. at 78–79, 110 S.Ct. 2270. Another form of conflict preemption is field preemption. *Id.* at 79 n. 5, 110 S.Ct. 2270. State law is impliedly preempted under field preemption if Con-

gress regulated a field so pervasively as to leave no room for state regulation in the field. *Cavallo v. Star Enterprise*, 100 F.3d 1150, 1154 (4th Cir.1996).

The dominance of federal interest, goals and obligations may imply that Congress intended to occupy a field exclusively, even where the law does not directly "conflict" with federal law. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The court discusses conflict and field preemption together as the methods used to determine congressional intent are applicable to both.

■ At the outset the court notes that the question of whether state law torts claims are preempted by NFIA creates considerable confusion within the circuits and even with the same judge. *Compare Cohen v. State Farm Fire & Cas.*, 68 F.Supp.2d 1151, 1160 (C.D.Cal.1999) (Matz, J.) (holding that NFIA does not preempt state tort claim) *with Scherz v. South Carolina Ins. Co.*, No. CV–99–13486 AHM RZX, 2000 WL 1358732 (C.D.Cal. Sept. 21, 2000) (Matz, J.) (holding that NFIA preempts state law claims). While the Fourth Circuit has never addressed this issue, the parties offer two other appellate court decisions as persuasive authority.

The Fifth Circuit Court of Appeals opinion in *Spence v. Omaha Indemnity Insurance Co.*, 996 F.2d 793 (5th Cir.1993), suggests that NFIA does not preempt state law tort claims. *Id.* at 796. While neither party argued that NFIA completely preempted plaintiff's state law fraud claim, the Fifth Circuit determined that the appropriate statute of limitations for plaintiff's misrepresentation claim was the four-

year state statute of limitations for fraud claims, not the one year federal limitation for NFIA contract claims. *Id.* at 795–96; *see also* 42 U.S.C. § 4072. In reaching its decision, the Fifth Circuit noted that WYO companies enjoined substantial autonomy in marketing and adjusting claims, and that FEMA regulations expressly provided that WYO companies are not agents of the federal government. *Spence*, 996 F.2d at 796–97 (citing 44 C.F.R. § 62.23(e), (g)). The Fifth Circuit opined that the express repudiation of an agency relationship between the federal government and WYO companies evidenced an intent to protect "the government from expanded liability" while leaving private insurers "responsible for their own tortious conduct." *Id.* at 797. Additionally, the opinion focused on limitations found in the FEMA regulations and standard flood insurance polices which limited federal reimbursement of WYO losses to claims arising under the flood insurance policy. *Spence*, 996 F.2d at 796. The Fifth Circuit clearly rejected contentions by WYO companies that they could recover their liability from tort-based claims from federal funds. *Id.* The court ultimately concluded that the federal statute of limitation for contract claims did not preempt the state statute of limitation for tort claims. While not directly addressing the issue of preemption of state law claims, the court's reasoning suggests that NFIA does not preempt state tort law claims.

Defendant incorrectly asserts that cases such as *Van Holt v. Liberty Mutual Fire Insurance Co.*, 143 F.3d 783 (3d Cir.1998) [hereinafter *Van Holt I* ] and *Greenhut v. Federal Emergency Management Agency*, No. 98–CV–152F(1) (E.D.N.C.1999), support its claim that federal law preempts all state claims.[3] *Greenhut* involved a lawsuit

---

**3.** Defendant's error is understandable. At least one district court incorrectly characterized the *Van Holt I* opinion as a preemption case. *See Mason v. Witt*, 74 F.Supp.2d at 955, 962 (E.D.Cal.1999). The question initially presented in *Van Holt I* was whether NFIA conferred subject matter jurisdiction over state law claims. *Van Holt*, 143 F.3d at 784.

The *Van Holt I* plaintiff attempted to characterize the state law tort claim as an action "under" the flood insurance policy in order to obtain jurisdiction under § 4053 of NFIA which grants federal courts " 'exclusive jurisdiction ... over disputes involving flood insurance policies.' " *Id.* at 787 (quoting 42 U.S.C. § 4053). The court held that § 4053

against FEMA and was decided on principles of sovereign immunity. *Van Holt I* dealt with subject matter-jurisdiction of federal courts over state law claims under NFIA. Moreover, *Van Holt I* cited the Fifth Circuit's opinion in Spence with approval and noted that NFIA and FEMA regulations addressed only coverage claims, not tort claims. *Id.* at 788. The Third Circuit later vacated the opinion, determined that subject matter jurisdiction exited, and explicitly reserved the question of whether NFIA preempts state law tort claims. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 169 n. 6 (3d Cir.1998) [hereinafter *Van Holt II* ]. Thus neither *Van Holt I* or *Van Holt II* address the issue presented in this case.

Turning to this court's discussion, defendant argues that Congress by implication preempted the entire field of flood insurance law, and thus NFIA immunizes WYO carriers from state tort law liability. As insurance law is an area traditionally regulated by the states, *Davis v. Travelers Property & Cas. Co.,* 96 F.Supp.2d 995, 1001 (N.D.Cal.2000), the defendant "bear[s] the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *De Buono v. NYSA–ILA Medical & Clinical Services Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). The defendant has not met its burden.

In analyzing the preemption issue, the court turns to the plain language of NFIA, FEMA regulations, and legislative history. Section 4072–the portion of NFIA dealing with payment and judicial review of flood claims-only addresses actions arising from a complete or partial "disallowance" of flood insurance claims. 42 U.S.C. § 4072; *see also Spence,* 996 F.2d at 796. Section 4072 is limited to actions in which the claimant asserts that the insured failed to pay claims under the contract, and does not address cause of actions arising out of tortious conduct. Moreover, the language of NFIA suggests that Congress anticipated that plaintiff would avail state law claims to address improper conduct of insurers. Section 4081(c) states that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission." As NFIA does not provide a cause of action for an insurance agent's "error or omission," it is logical to conclude that Congress intended for plaintiffs to avail state law remedies to address an insurer's tortious misconduct. *See Davis,* 96 F.Supp.2d at 1002; *Cohen v. State Farm Fire & Cas.,* 68 F.Supp.2d 1151, 1157 (C.D.Cal.1999).

Similarly the legislative history of NFIA does not indicate preemption of state law claims, and even suggests that Congress intend to preserve a plaintiff's right to obtain tort relief in state courts. The legislative history behind section 4053 [4] states

only provided subject matter jurisdiction for "a coverage, or breach of contract, cause of action based on the denial of an insurance claim," and not on tort claims. *Id.* The court specifically noted that plaintiff only asserted § 4053 as a basis for subject matter jurisdiction, and that the court could not find anything in the record on which to base diversity of citizenship jurisdiction. *Van Holt II* later vacated this opinion finding that jurisdiction existed under 42 U.S.C. § 4072 of NFIA, but holding that plaintiff's state law claim could not survive summary judgment on the its merits. *Id.* at 169.

4. While FEMA implemented the WYO program under Part B of NFIA, and not Part A which includes section 4053, the legislative history of Part A provides insight to the court's analysis. Originally, Congress implemented Part A to govern the relationship between NFIA and private insurers. Private insurers' participation was later discontinued, but FEMA later reintroduced private insurers' participation under NFIA, but did so under its regulatory powers in Part B. The legislative history of Part A provides some insight into the overall statutory scheme Congress create under NFIA. It also cast doubt on defendant's claim that Congress intend for NFIA to preempt state law claims, and even suggest that Congress anticipated the use of state tort claims against private insurers.

that while claimants may file lawsuits in federal courts, claimants can "also avail themselves of legal remedies in State courts." H.Rep. No. 90–1585, *reprinted in* 1968 U.S.C.C.A.N. 2873, 3022.

Regulations promulgated by FEMA also support that NFIA does not preempt state law claims. FEMA explicitly states that private insurance companies are not the agents of the federal government and that WYO companies are "solely responsible" for "obligations to [their] insured under any flood policy." 44 C.F.R. § 62.23(g). FEMA may refuse to reimburse WYO companies for "claims grounded in actions by the Company that are outside the scope of [NFIA] ... and/or involve issues of insurer/agent negligence." 44 C.F.R. pt. 62 app. A. FEMA regulations also provide for significant autonomy for private WYO companies in marketing and adjusting claims. *See Spence,* 996 F.2d at 796 n. 15 (citing 44 C.F.R. pt. 62.23(e)). Stripping insurance claimants of protections offered by state law from the tortious conduct of insurers would leave a gapping hole in the flood insurance field which Congress did not intend. Additionally, WYO insurers are directed to adjust claims "in accordance with general company standards." 44 C.F.R. § 62.23(i)(1). The acceptable standards of any insurance company would naturally include complying with applicable state standards of care. Based on these provisions, the court concludes that neither the statutory nor regulatory scheme clearly show that Congress intended to preempt all state law torts claim in the flood insurance field.

The court also rejects defendant's assertion that a tort action against WYO insurers is the "function equivalent" of a lawsuit against the federal government. This action is against Standard Fire, not FEMA. As shown above, WYO insurers are not agents of the federal government, and FEMA is not required to reimburse WYO insurers for claims that do not arise from the insurance policy. 44 C.F.R. § 62.23(g); 44 C.F.R. 62 app. A. Additionally, FEMA regulations governing the relationship between FEMA and WYO insurers for acts of negligence state:

> The parties shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement. In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any costs incurred due to that error. In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP [National Flood Insurance Program], or other related entities, *the responsible party shall bear all liability attached to that delay, error or omission* to the extent permissible by law.

44 C.F.R. pt. 62 app. A., art. IX. An insurer's tortious conduct creates an extra-contractual claim which the insurer is responsible for, not FEMA. If the plaintiff prevails on her state law claim, it would be a judgment against the defendant, and FEMA would have no obligation to reimburse defendant for a judgment arising out of defendant's improper conduct. *Davis v. Travelers Property & Cas. Co.,* 96 F.Supp.2d 995, 1004 (S.D.Cal.2000)

Defendant asserts that allowing claimants to bring state law claims undermines federal interests in the flood insurance field. While FEMA has a strong interest in making flood insurance affordable and available to those in flood prone areas, it is not necessary to preempt state-based tort claims to protect that interest. The defendant correctly asserts that the primary purpose of NFIA was to provide economical flood insurance to communities in flood prone areas. Allowing claimants to sue private insurers for tortious conduct would discourage some providers from participating in the federal program. However, the effect on the federal interest is remote. *Zumbrun v. United Services Automobile Association,* 719 F.Supp. 890, 894 n. 3

(E.D.Cal.1989). FEMA offers insurance policies directly to communities in flood prone areas so any decreased participation in the program would not affect the availability of flood insurance.

Defendant also asserts that allowing plaintiffs to bring tort claims against WYO insurers would create two different classes of insurance providers: FEMA, not subject to tort actions, and WYO insurers who would be subject to tort lawsuits. FEMA, as an arm of the federal government, is protected from tort lawsuits by sovereign immunity. Private insurers are not. The fundamental policy differences between allowing FEMA to assert sovereign immunity, and extending those protections to private insurer makes defendant's argument unpersuasive. WYO insurers agree to provide flood insurance in exchange for compensation for their services. *See* 44 C.F.R. pt. 62 app. A, art. III(B). In contrast, FEMA provides flood insurance as a governmental program, not as a business venture.

Defendant also asserts that allowing claimants to bring tort claims against WYO insurers places these insurers in a difficult position because when claims do not comply with NFIA requirements, WYO insurers must choose between "strictly enforcing federal law," and the possibility that dissatisfied claimants will sue private insurers in tort. Insurers, however, face this dilemma regularly. Denying claimants coverage under an insurance policy carries the risk of subsequent lawsuits. Courts are well equipped to dispose of frivolous and unfounded claims. Moreover, asserting that WYO insurers should be protected from their tortious conduct because they may be tempted to violate federal law is completely unpersuasive. Compliance with both federal NFIA regulations and basic standards of care is neither impossible nor impractical, and

this court is unwilling to conclude that Congress did not intend for WYO carriers to comply with both.[5]

Finally, the state has its own interest in regulating the activities of insurers within its borders. Insurance agents are typically licensed and regulated by state insurance agencies. States have a substantial interest in ensuring that the relationship between the insurer and the insured is conducted in a proper manner. "[S]tate law has evolved rigorous and well-defined standards of conduct regulating insurers operating within" its borders to protect these interests. *Cohen v. State Farm Fire and Cas.*, 68 F.Supp.2d 1151, 1155 (C.D.Cal.1999) (quoting *Zumbrun v. United Servs. Automobile Assn.*, 719 F.Supp. 890, 894–95 (E.D.Cal.1989)). Requiring insurers who offer flood insurance to abide by the same standards of conduct applicable to all other insurance policies would not place a significant burden on insurance companies. *See Davis v. Travelers Property & Cas. Co.*, 96 F.Supp.2d 995, 1003 (N.D.Cal.2000) ("It is hard to believe that the NFIP will be compromised merely if states subject WYO carriers to their normal rules that apply to the same carriers in non-NFIP contexts. . . ."). Moreover, requiring insurers to comply with basic standards of care in handling other types of insurance claims would not compromise the goals and policies of NFIA. In fact, requiring insurance companies to deal with the claimants fairly and competently promotes the federal goal of creating an "efficient national flood insurance program." *Id.*

In sum, unlike contract claims under the standard flood insurance policy, tort claims base liability on the wrongful conduct of a private party. NFIA only creates a cause of action when a claimant sues on the flood policy contract. As Congress does not

**5.** Defendant asserts that because it strictly enforces and construes federal regulations, defendant necessarily violates state law rules of "reasonable expectation, substantial compliance, and notice/prejudice." However,

these standards are used to enforce contractual provisions when plaintiffs fail to meet contractual obligations, and not to establish negligence by the defendant.

provide a federal remedy for tortious conduct of private insurers, the preemption of state law tort claims would leave an entire area of the insurance field unregulated and immunize private insurers no matter how egregious their conduct. The party that would be forced to shoulder the burden of flood damage losses would be the insured, the party NFIA seeks to protect. If Congress had intended to immunize WYO companies from liability for their own tortious conduct, it would have done so in a more explicit fashion. The court, therefore, holds that defendant's state law tort claims are not preempted.[6]

## IV. Plaintiff's Right to a Jury Trial on State Law Claims

 Defendant also motions the court to quash plaintiff's request for a jury trial. Plaintiff concedes that she is not entitled to a jury trial on her breach of contract claim, but asserts that a jury trial is proper on her state law claim. Fed.R.Civ.P. 38; N.C.Gen.Stat. § 7.5–1.1. The cases cited by defendant apply to contract actions under the NFIA when federal funds are at stake. The court has determined that no federal funds are at stake in plaintiff's tort claim against defendant. Plaintiff is entitled to a jury trial on her state law tort claim. The court denies defendant's motion to quash plaintiff's demand for a jury trial on the state law claim.

## V. Plaintiff's Motion to Compel Complete Response to Discovery and Sanctions

### A. Complete Response to Rule 30(b)(6) Deposition

Rule 30(b)(6) states:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable

particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. *Id.*

 Plaintiff motions for the court to require defendant to respond completely to Item 7 of plaintiff's Notice of Deposition which was submitted to defendant on June 12, 2000. (Motion to Compel, Ex. A.). Item 7 stated that plaintiff's attorney would depose defendant about "the adjustment of residential flood losses under insurance policies issued pursuant to the National Flood Insurance Act, resulting in lawsuits" against Standard Fire. On June 13, 2000, defendant designated Kenneth A. Montague ("Montague") to testify about the subject matter of Item 7. Montague, however, only reviewed approximately 15 of the 125 files that were potentially responsive to Item 7. (Mot. to Compel, Ex. C., pp. 68–69.)

Plaintiff contends that Montague was inadequately prepared for the deposition and motions this court to compel discovery and to impose sanctions on defendant. In response, defendant asserts that the twenty-four-hour notice provided by plaintiff was insufficient for Montague to review all the files. Rule 30(b)(1) of the Federal Rules of Civil Procedure provides:

A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action. The

---

**6.** The analysis in this case is limited to the preemption of compensatory tort claims and does not address the availability of interest payments, punitive damages, or attorneys'

fees in connection with a favorable tort judgment. If necessary, the court will address these questions after defendant's liability is determined.

notice shall state the time and place for taking the deposition and the name and address of each person to be examined, if known, and, if the name is not known, a general description sufficient to identify the person or the particular class or group to which the person belongs.

*Id.*

It is uncontested that plaintiff did not provide formal notice specifying the date and place of Montague's deposition until twenty-four hours before the deposition. However, on May 22, 2000, plaintiff's attorney sent defendant's attorney a letter requesting defendant to submit dates on which to depose witnesses. (Mot. to Compel, Ex. B). The letter also contained "categories of examination for Standard Fire's 30(b)(6) representative" which were provided by the plaintiff at the defendant's request. *Id.* As plaintiff clearly identified the subject matter of Item 7 to defendant on May 22, 2000, defendant's attorney received reasonable notice of the plaintiff's intent to inquire into the subject matter of Item 7. Defendant, therefore, had a duty to provide a person at the Rule 30(b)(6) deposition who could adequately respond to plaintiff's attorney's questions. Defendant failed to make a good faith effort to designate or adequately prepare a representative who could answer plaintiff's questions. *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority* 93 F.R.D. 62, 67 (D.P.R.1981). The court, therefore, grants plaintiff's motion to compel a complete response to Item 7. However, as plaintiff did not provide formal notification to defendant until twenty-four hours before the deposition, the court finds it appropriate for the parties to divide the fees and expenses for a second deposition to address the subject matter of Item 7. Plaintiff's request for attorneys' fees is denied.

### B. Defendant's Response to Written Discovery Requests by Plaintiff

██ Plaintiff served written discovery requests on defendant on May 11, 2000

and May 15, 2000. Defendant failed to timely respond to plaintiff's written discovery request within the thirty days provided by Rule 34(b) of the Federal Rules of Civil Procedure. On June 21, 2000, plaintiff submitted to defendant a letter asking for compliance with written discovery request and seeking to comply with Local Rule 4.03 which requires parties to exercise good faith to resolve discovery disputes before resorting to judicial remedies. On July 5, 2000, defendant served its answers and objection to plaintiff's interrogatories. Plaintiff motions the court to compel complete answers on the following interrogatories.

At the outset the court notes that the defendant failed to timely respond to plaintiff's interrogatories which counsel for granting plaintiff's motion. With respect to defendant's assertion that it did not respond to plaintiff's discovery request because plaintiff's state law tort claims were preempted (Motion to Compel, Ex. E), defendant neither objected to the interrogatories in a timely manner, nor petitioned the court to decide the preemption matter at an earlier date. The court has rejected the defendant's preemption argument, and therefore, the defendant's primary justification for failing to comply with discovery.

Rule 34 requires the production of discoverable evidence within the possession, custody or control of the party. Fed. R.Civ.P. 34(a). Plaintiff sought production of "any and all claims handling manuals or materials and/or procedures prepared by or, at the time of loss, used by" defendant or Colonial. Defendant objected that the documents sought to be produced were not in the possession or the control of the defendant or were public record and readily available to the plaintiff.

Discovery is not required when documents are in the possession of or are readily obtainable by the party seeking a motion to compel. *Dushkin Publishing Group, Inc. v. Kinko's Service Corp.,* 136 F.R.D. 334, 335 (D.D.C.1991); *Securities and Exchange Commission v. Samuel H.*

*Sloan & Co.,* 369 F.Supp. 994, 995 (S.D.N.Y.1973) As the manuals issued by the National Flood Insurance Program are public records which are readily accessible to plaintiff, defendant is not required to produce these documents.

██ The manuals in the possession of Colonial present another question. Defendant asserts that the documents are not within its control because the adjustment was conducted by Colonial, an "independent adjuster." Plaintiff, on the other hand, asserts that defendant has the ability to command Colonial to release the requested documents. Plaintiff's and defendant's definitions of control differ greatly. Plaintiff asserts that even if a party does not have the right to require a non-party to produce documents, the party's practical *ability* to produce the documents determines whether the defendant has "control" of the document. On the other hand, defendant contends that "control" encompasses a defendant's legal *right* to obtain the requested documents. The court agrees with defendant.

The Federal Rules of Civil Procedure provide a method for obtaining documents from non-parties. Fed.R.Civ.P. 34(c), 45. Interrogatories, however, are limited to parties. Fed.R.Civ.P. 33. In drafting the rules, the committee deemed it important to involve the court whenever discovery was requested from a non-party. Adopting the "ability to obtain" test would usurp these principles, allowing parties to obtain documents from non-parties who were in no way controlled by either party. Moreover, commentators caution that even when parties may be able to obtain documents, they may only be able to do so with extraordinary effort or expense. Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2210 (2d ed.1994). When information is readily attainable through a subpoena duces tecum, no compelling reason exists to expand the definition of control. Thus, in order for the material to be discoverable, defendant must have some type of legal right to the material plaintiff seeks to discover.

Relationships which evidence a legal right of a party to obtain a document from non-party include a client from an attorney, a insured from an insurer, an employer from current employees; and a parent company from a subsidiary company. *Id.* In the present case, plaintiff has not shown that defendant can require Colonial to produce the evidence sought. Additionally, the defendant assures the court that it does not have actual possession of the evidence sought. Plaintiff's motion to compel defendant to produce evidence held by Colonial is, therefore, denied.

Plaintiff also requests that the court compel defendant to identify all lawsuits against the defendant within the past five years involving allegation of misrepresentation by the defendant. Defendant's answer objected to the interrogatories on basis of preemption, but then proceed to represent that no cases involved the requested information. (Motion to Compel., Ex. E.). However, the defendant's answer then proceeded to list three cases of "public record in the courts of North Carolina," but provided no explanation for their inclusion in the answer. Either the defendant's answer to the interrogatory was unclear, the defendant incorrectly asserted that no cases met the interrogatory requirements, or the cases cited by defendant were superfluous. The court orders defendant to clarify its answer to interrogatory four, and if necessary, produce other cases which fall within the request.

While the court in its discretion does not award attorney fees to plaintiff, the parties are cautioned to exercise good faith in cooperating with the remaining discovery issues.

### Conclusion

Defendant's motion for summary judgment on plaintiff's breach of contract claim is GRANTED. Defendant's motions to dismiss plaintiff's state law claim and

quash plaintiff's demand for a jury trial are DENIED.

With respect to discovery issues, the court GRANTS and DENIES plaintiff's motion in part. Defendant is ORDERED to participate in a second deposition and provide a witness who can adequately respond to the subject matter under Item 7 of plaintiff's Notice of Deposition. Defendant is further ORDERED to pay half of the costs and fees for the second deposition.

With regard to plaintiff's interrogatories, the court DENIES plaintiff's motion to compel defendant to produce materials which are held by Colonial. Defendant is further ORDERED to clarify or correct its answer to questions regarding lawsuits against defendant. Attorneys' fees are DENIED.

Finally, defendant's motion for oral arguments is DENIED.