JOHN AND SYLVIA GUYTON, PLAINTIFFS v. FM LENDING SERVICES, INC., DEFENDANT

No. COA08-614

(Filed 18 August 2009)

## 1. Statutes of Limitation and Repose— Rule 41—timeliness

Plaintiffs' claims were not barred by N.C. Gen. Stat. § 1A-1, Rule 41(a) even though plaintiffs failed to refile their second complaint within one year after voluntarily dismissing their first complaint.

## 2. Statutes of Limitation and Repose— fraud—negligent misrepresentation—date upon which plaintiffs initially learned the facts necessary to establish a claim

Plaintiffs' claims were not barred by the statute of limitations for fraud and negligent misrepresentation in an action arising from the purchase of property in a flood hazard area. The validity of defendant's statute of limitations defense hinges on when plaintiffs initially learned the necessary facts.

## 3. Insurance— preemption—negligent misrepresentation property not in special flood hazard areas—unfair and deceptive trade practices—fraud

In an action arising from the concealment of knowledge that property was in a flood zone, defendant cannot be held liable to

plaintiffs under the National Flood Insurance Act but a legal duty of the type claimed by plaintiffs does exist under the North Carolina Mortgage Lending Act.

**4. Negligence— misrepresentation—fraud—unfair and deceptive trade practices—motion to dismiss—sufficiency of evidence**

While plaintiffs have adequately stated claims for fraud and unfair and deceptive trade practices, plaintiffs' complaint does not state a claim for negligent misrepresentation sufficient to survive a dismissal motion under N.C.G.S. § 1A-1, Rule 12(b)(6).

Appeal by Plaintiffs from order entered 13 March 2008 by Judge Ripley E. Rand in Wake County Superior Court. Heard in the Court of Appeals 13 January 2009.

*The Law Offices of Michele A. Ledo, by Michele A. Ledo, Esquire, for Plaintiffs-Appellants.*

*Manning, Fulton & Skinner P.A., by William C. Smith, Jr., for Defendant-Appellee.*

ERVIN, Judge.

John and Silvia Guyton (Plaintiffs) appeal from an order entered by the trial court on 13 March 2008 granting a motion to dismiss filed by FM Lending Services, Inc. (Defendant), pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). After careful consideration of the record and the applicable law, we conclude that the trial court's order is reversed in part.

In their complaint,[1] Plaintiffs allege that they applied for a loan from Defendant on 22 October 2003 in order to purchase a tract of real property located at 4812 Winterlochen Road in Raleigh, North Carolina. The Federal Emergency Management Administration (FEMA), which is part of the United States Department of Homeland Security, identifies property located within the one-hundred year flood plain and designates these properties as special flood hazard areas (SFHA). On 23 October 2003, Defendant obtained a flood certification from First American Flood Data Services which stated that the property was located in a FEMA-designated SFHA. Defendant

---

1. Consistently with the required standard of review, the statement of facts is based on the allegations set out in Plaintiffs' complaint. We recognize that Defendant disputes the accuracy of many of the factual statements set out in the text.

also obtained, prior to closing, a copy of a survey which contained the same information. Defendant did not, however, disclose the fact that the property was located in an SFHA to Plaintiffs at that time. In addition, Defendant failed to provide Plaintiffs with copies of either the flood certification or the survey prior to closing.

On 27 October 2003, Plaintiffs closed on the purchase of the property without ever learning that it was located in a FEMA-designated flood plain. Subsequently, Defendant informed Plaintiffs that the property was located in an SFHA. On 14 November 2003, Defendant provided Plaintiffs with a copy of the flood certification upon which the date that Defendant received the document—23 October 2003— had been whited out. Defendant also gave Plaintiffs an incomplete copy of the survey.

As a result of the fact that the property was located in an SFHA, Plaintiffs were obligated to procure flood insurance for the life of their thirty year mortgage. The initial cost of the required flood insurance was $1,600.00 per year. By the time that Plaintiffs filed their complaint, they were paying $2,200.00 per year in flood insurance costs and anticipated future cost increases.

Plaintiffs initially filed a complaint against Defendant with the Commissioner of Banks. In response, Defendant affirmatively stated that it did not receive the flood certification report until the date of closing, 27 October 2003, and that the flood certification that it received at that time was incomplete. In addition, Defendant represented to the Commissioner that the information in its possession prior to closing indicated that the property was not located in an SFHA. Based on this evidence, the Commissioner found no evidence of any violation of law by Defendant.

Plaintiffs then filed a complaint in Wake County Superior Court asserting claims for breach of contract and negligence against Defendant. Plaintiffs voluntarily dismissed this complaint without prejudice on 15 November 2004.

After the dismissal of Plaintiffs' original civil action, Defendant's Senior Vice President of Operations, Kathleen Sue Carpenter (Carpenter), was deposed in related litigation. At that time, Carpenter revealed that Defendant altered the flood plain certification to conceal the date upon which it had been received by Defendant. Carpenter's deposition testimony represented the first occasion on which Plaintiffs learned that Defendant was aware, prior to closing,

GUYTON v. FM LENDING SERVS., INC.

[199 N.C. App. 30 (2009)]

that the property was located in an SFHA without disclosing this information to Plaintiffs.

After gaining this additional information, Plaintiffs filed a second complaint against Defendant in the Wake County Superior Court asserting fraud, negligent misrepresentation, and unfair and deceptive practices claims. On 16 November 2007, Defendant filed a motion to dismiss Plaintiffs' claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Defendant's motion was heard on 18 February 2008. On 13 March 2008, the trial court entered an order granting Defendant's dismissal motion in which it stated that "Plaintiffs have not stated a claim upon which relief could be granted and . . . judgment as a matter of law at this stage in the proceedings is appropriate." From this order, Plaintiffs appealed to this Court.

## I: Standard of Review

"The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true." *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 429 (2007). "On a motion to dismiss, the complaint's material factual allegations are taken as true." *Owen*, 181 N.C. App. at 512, 640 S.E.2d at 429. Legal conclusions, however, are not entitled to a presumption of validity. *Peterkin v. Columbus County Bd. of Educ.*, 126 N.C. App. 826, 828, 486 S.E.2d 733, 735 (1997). "Dismissal is proper 'when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Owen*, 181 N.C. App. at 512, 640 S.E.2d at 429.

## II: Voluntary Dismissal: N.C. Gen. Stat. § 1A-1, Rule 41

[1] First, we address Defendant's contention that Plaintiffs' claims are barred by N.C. Gen. Stat. § 1A-1, Rule 41(a), given that Plaintiffs failed to re-file their second complaint within one year after voluntarily dismissing their first complaint on 15 November 2004. We conclude that Plaintiffs' claims are not barred by N.C. Gen. Stat. § 1A-1, Rule 41(a).

N.C. Gen. Stat. § 1A-1, Rule 41(a)(1), provides, in pertinent part, as follows:

> Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this or any other state or of the United States, an action based on or including the same claim. If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, *a new action based on the same claim may be commenced within one year* after such dismissal unless a stipulation filed under (ii) of this subsection shall specify a shorter time.

*Id.* (emphasis added). Defendant contends that, since the record clearly indicates that Plaintiffs voluntarily dismissed their first complaint on 15 November 2004 and did not file the current complaint until 16 October 2007, Plaintiffs' second complaint against Defendant is barred by N.C. Gen. Stat. § 1A-1, Rule 41(a).

This Court stated in *Whitehurst v. Transportation Co.*, 19 N.C. App. 352, 198 S.E.2d 741 (1973), that:

> It was the opinion of writers at the time of the adoption of Rule 41 that the provisions of that rule follow G.S. 1-25 without change, and the wording of the rule would so indicate. . . . It has long been held that G.S. 1-25 did not apply when the party would not otherwise be barred from his right of action by the lapse of time prescribed by the statute of limitation relating to the cause of action. When the General Assembly adopted the provisions of G.S. 1-25 into Rule 41(a)(1), it is our opinion that it adopted also that body of case law interpreting G.S. 1-25, the effect being that it is an extension of time beyond the general statute of limitation rather than a restriction upon the general statute of limitation. In other words, a party always has the time limit prescribed by the general statute of limitation and in addition thereto they get the one year provided in Rule 41(a)(1). But Rule 41(a)(1) shall not be used to limit the time to one year if the general statute of limitation has not expired.

*Whitehurst*, 19 N.C. App. at 355-56, 198 S.E.2d at 742 (citations omitted). Thus, it is important to note that, under N.C. Gen. Stat. § 1A-1, Rule 41(a), a plaintiff may "dismiss an action that originally was filed within the statute of limitations and then refile the action after the statute of limitations ordinarily would have expired." *Clark*

*v. Visiting Health Prof'ls, Inc.*, 136 N.C. App. 505, 508, 524 S.E.2d 605, 607 (2000). On the other hand, as noted in *Whitehurst*, N.C. Gen. Stat. § 1A-1, Rule 41(a), does not operate to shorten the applicable statute of limitations. Therefore, Defendant's argument that Plaintiffs' claims are time-barred by virtue of N.C. Gen. Stat. § 1A-1, Rule 41(a), because more than one year has passed since they voluntarily dismissed their first complaint against Defendant necessarily fails. As a result, the extent to which Plaintiffs' claims are time barred depends on the proper application of the relevant statute of limitations rather than upon the operation of N.C. Gen. Stat. § 1A-1, Rule 41(a).

## III: Statute of Limitations

**[2]** Next, we address whether Plaintiff's claims are time-barred pursuant to the operation of the statute of limitations applicable to claims of fraud and negligent misrepresentation.[2] After careful consideration of the record in light of the relevant legal principles, we conclude that neither Plaintiffs' fraud nor negligent misrepresentation claims are barred by the applicable statute of limitations.

The statute of limitations applicable to negligent misrepresentation claims is three years. *See* N.C. Gen. Stat. § 1-52(5); *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997). "[A] claim for negligent misrepresentation 'does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation.' " *Barger*, 346 N.C. at 666, 488 S.E.2d at 224 (quoting *Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 57, 442 S.E.2d 316, 320 (1994)). The applicable statute of limitations for fraud is three years as well. *See* N.C. Gen. Stat. § 1-52(9). N.C. Gen. Stat. § 1-52(9) provides that, "[f]or relief on the ground of fraud or mistake[,] the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* As a result, "the three-year statute of limitations for fraud or mistake does not commence to run . . . until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Lee v. Keck*, 68 N.C. App. 320, 326, 315 S.E.2d 323, 328 (1984), *dis. review denied*, 311 N.C. 401, 319 S.E.2d 271 (1984) (quotation omitted). Thus, the validity of any statute of limitations defense that Defendant might assert hinges on the date upon which Plaintiffs initially learned the facts

---

2. Given that Defendant has not argued on appeal that Plaintiffs' unfair and deceptive practices claim is barred by the applicable statute of limitations, we need not address the statute of limitations issue with respect to that claim.

necessary to establish a claim against Defendant relating to the purchase of the property sounding in fraud or mistake.

The Plaintiffs' claims for negligent misrepresentation and fraud rest upon the contention that Defendant knew that the property purchased by Plaintiff was located in an SFHA before the date of closing, but refrained from disclosing this information until after that date. As we read the complaint, the allegations of which must be taken as true given the procedural posture in which this case has come before us, Plaintiffs have alleged that they first learned that Defendant knew that the property was located in an SFHA prior to the closing and failed to disclose that information to Plaintiffs until Carpenter's 11 May 2006 deposition. As a result, the allegations of the complaint indicate that Plaintiffs' causes of action for fraud and negligent misrepresentation against Defendant did not accrue until that date. Thus, the allegations of the Complaint do not establish that Plaintiffs' claims for negligent misrepresentation and fraud are time-barred.

## IV: Failure to State a Claim

The essential substantive issues raised by Plaintiffs' appeal are: (1) whether a lender with knowledge that the property to be purchased by borrower is located in a flood plain owes a legal obligation arising under North Carolina law to disclose that fact to the borrower, given that the resulting purchase obligates the borrower to procure flood insurance for the life of the resulting loan; (2) assuming *arguendo* that such a legal obligation exists under state law, whether claims asserted for breach of that duty are pre-empted by federal law; and (3) whether Plaintiffs have pled claims for relief in a manner sufficient to survive a dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). After careful review of the record in light of the applicable law, we conclude that the trial court erred in part by dismissing Plaintiffs' complaint.

## A: Existence of a Legal Duty

[3] The first issue that we must address is the extent to which a legal duty exists under either federal or North Carolina law which might support a finding of liability under the theories alleged in the complaint. After carefully reviewing the applicable legal principles, we conclude that Defendant cannot be held liable to Plaintiff under the National Flood Insurance Act (NFIA), either directly or indirectly, but that a legal duty of the type claimed by Plaintiffs does exist under the North Carolina Mortgage Lending Act.

Congress enacted the NFIA "in order to make flood insurance available on reasonable terms and conditions to those in need of such protection." *Peal v. N.C. Farm Bureau Mut. Ins. Co.*, 212 F. Supp. 2d 508, 512 (E.D.N.C. 2002) (citing *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 598 (4th Cir. 2002); 42 U.S.C. § 4001). 42 U.S.C. § 4001(a) states, in pertinent part, that:

> The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; (2) despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection.

42 U.S.C. § 4001(a). In addition, the enactment of the NFIA reflected Congressional concern about the increasing amount of federal flood relief expenditures. *See Till v. Unifirst Fed. S. & L. Ass'n*, 653 F.2d 152 (1981) (stating that "[t]he principal purpose in enacting [NFIA] was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance"). More particularly, the NFIA attempts to reduce the risk to the public treasury created by federally-backed or regulated loans for real property that are not protected by adequate flood insurance. *Till*, 653 F.2d at 159 ("Congress was interested . . . in protecting the lending institutions whose deposits the federal regulatory agencies insured"). For that reason, 42 U.S.C. § 4104a(a)(1) states, in pertinent part, that:

> Each Federal entity for lending regulation (after consultation and coordination with the Financial Institutions Examination Council) shall by regulation require regulated lending institutions, as a condition of making, increasing, extending, or renewing any loan secured by improved real estate or a mobile home

that the regulated lending institution determines is located or is to be located in an area that has been identified by the Director under this title or the Flood Disaster Protection Act of 1973 as an area having special flood hazards, *to notify the purchaser or lessee (or obtain satisfactory assurances that the seller or lessor has notified the purchaser or lessee) and the servicer of the loan of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease, or other documents involved in the transaction.* The regulations shall also require that the regulated lending institution retain a record of the receipt of the notices by the purchaser or lessee and the servicer.

42 U.S.C. § 4104a(a)(1) (emphasis added).

Plaintiffs and Defendant agree that a party injured by a violation of the requirement that lending institutions "notify the purchaser . . . of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement . . . or other documents involved in the transaction" set out in 42 U.S.C. § 4104a(a)(1), has no express or implied private federal right of action against the lender or any other party arising from a violation of that requirement. *See Mid-America Nat. Bank v. First Sav. & Loan Ass'n*, 737 F.2d 638 (1984) (stating that "[n]either Section 4012a(b) nor Section 4104a expressly create[] a federal cause of action in favor of borrowers against mortgage lenders where the lenders do not direct borrowers to purchase flood insurance in the amount of the loan or where lenders do not notify borrowers of the HUD flood-risk area designation[,]" and holding that, because there was no "indication that Congress intended to authorize a federal cause of action in favor of borrowers against lenders under Sections 4012a(b) and 4104a," the court would not imply a new cause of action); *Till*, 653 F.2d 152; *Hofbauer v. Northwestern Nat. Bank of Rochester*, 700 F.2d 1197 (1983); *Arvai v. First Fed. Sav. & Loan Ass'n*, 698 F.2d 683 (1983); *Ford v. First Am. Flood Data Servs.*, 2006 U.S. Dist. LEXIS 74350 (2006) (stating that the "Fourth Circuit has clearly held that there is neither an express nor an implied private right of action by a borrower for an alleged violation of the flood zone determination and notification requirements of the Act"). The question of whether a cause of action independent of 42 U.S.C. § 4104a(a)(1) that arises from a factual scenario encompassing a violation of that statutory provision may be maintained under North Carolina law is, however, an issue of first impression.

**GUYTON v. FM LENDING SERVS., INC.**

[199 N.C. App. 30 (2009)]

### 1: Independent State Law Cause of Action

Having decided that there is no express or implied federal private right of action under the NFIA, we next examine whether Defendant owed a legal duty to Plaintiffs under North Carolina law. In opposing Plaintiffs' efforts to establish the existence of such a legal duty, Defendants argue that North Carolina should not adopt 42 U.S.C. § 4104a(a)(1) as the standard to be independently applied to situations of this nature under state law and that North Carolina does not recognize an independent disclosure duty arising under these facts. After carefully examining Defendant's arguments, we are constrained to disagree.

In arguing that North Carolina should not recognize an independent state law claim for relief based on facts that would constitute a violation of 42 U.S.C. § 4104a(a)(1), Defendant places considerable reliance on *Ford*, 2006 U.S. Dist. LEXIS 74350. In *Ford*, the District Court pointed out that "[n]o North Carolina court has yet ruled upon the issue of whether a borrower has a private state law cause of action against either a lender or a third-party flood zone determination company based on a violation of the Act." *Ford*, 2006 U.S. Dist. LEXIS 74350. After noting that "there is neither an express nor an implied federal private right of action by a borrower for an alleged violation of the flood zone determination and notification requirements of the Act," the *Ford* court stated that, "[i]n addition to disallowing private federal claims under the Act, some federal courts have also refused to allow common law and other state law claims by borrowers under the Act." *Id.* However, the *Ford* court acknowledged that "[m]ost . . . federal courts . . . have determined that whether a state law claim based on the violation of a federal statute may be brought is a matter of state law for state courts to decide[.]" *Id.*; *see also Hofbauer*, 700 F.2d at 1201 (holding that, although a federal statute may create a standard of conduct the violation of which suffices to support a claim arising under state law, whether such a claim exists is a question best left entirely to state courts); *Till*, 653 F.2d at 161-62 (holding that the existence of state law claims depends upon state rather than federal law and remanding the plaintiff's claims to state court). As a result of the fact that the absence of a federal private right of action under the NFIA does not inherently preclude the recognition of a state law claim that encompasses conduct prohibited by 42 U.S.C. § 4104a(a)(1), we are now called upon to decide whether a lender is liable under North Carolina law for damages resulting from a failure to disclose the fact that property is located in a flood plain.

In determining whether such a state law claim should be recognized in North Carolina, we find the analysis of the United States Court of Appeals for the Fifth Circuit in *Till*, 653 F.2d 152, to be instructive. In *Till*, the Fifth Circuit, like many other federal courts, held that there was no express or implied federal private right of action pursuant to the NFIA. However, the *Till* court went on to hold that the district court erred in "granting a summary judgment on all claims, since its holding dismissed the Mississippi common law claims with prejudice." *Till*, 653 F.2d at 162. The court reasoned:

> The [district] court held that "inasmuch as all of Plaintiffs' claims herein are dependent upon the implication of a private cause of action, Plaintiffs' claims must be dismissed." Appellees, attempting to support the court's decision, reason that state common law does not provide all the elements of the asserted fraud or negligence. They assert that both causes of action require a breach of duty and that the only duty here arises from federal enactments. Therefore, they contend, there must exist a private cause of action in the federal statutes themselves before appellants can recover from the state based claims. . . . *Whether this is true is a matter of state law.*

*Till*, 653 F.2d at 161 (emphasis added). Essentially, *Till* holds that the responsibility of determining whether a state law claim arising from facts that establish a violation of 42 U.S.C. § 4104a(a)(1) exists is a matter for the state and not the federal courts and must be decided on the basis of state law rather than federal law principles.

The first basis on which we might find the existence of a legal duty of the type necessary to support Plaintiffs' claim against Defendant would come from treating 42 U.S.C. § 4104a(a)(1) as establishing the required legal standard for purposes of a state law claim. Although utilizing federal statutes as the basis for recognizing a state law duty is undoubtedly appropriate in some instances, we are not convinced that doing so in this instance is appropriate for two different reasons.

First, we have concerns about adopting this approach that are highlighted by the Fifth Circuit's interpretation of 42 U.S.C. § 4012a(e)(1) in *Wentwood Woodside I, LP v. GMAC Commercial Mortg.*, 419 F.3d 310 (5th Cir. 2005). As the Fifth Circuit stated, 42 U.S.C. § 4012a(e)(1) provides, in pertinent part, that "[i]f . . . at any time during the term of a loan[,] . . . the servicer for the loan deter-

**GUYTON v. FM LENDING SERVS., INC.**

[199 N.C. App. 30 (2009)]

mines that the [SFHA property] is not covered by flood insurance . . . the servicer shall notify the borrower [of this deficiency.]" 42 U.S.C. § 4012a(e)(1); *Wentwood Woodside*, 418 F.3d at 323, f.11. The *Wentwood Woodside* court went on to hold that "the statute cannot be read to impose an unconditional duty on servicers to determine whether their serviced properties are adequately insured against flood damage[,]" reasoning:

> Significantly, the statute does not *require* a servicer to *know* that a serviced property has been designated as being within an SFHA. Rather, the statute creates a duty of notification only *if* the servicer learns that the serviced property falls within an SFHA. By using the conditional "if," the statute implicitly contemplates that there will be circumstances in which a servicer does not determine that an under-insured SFHA property is in fact under-insured.

*Wentwood Woodside*, 419 F.3d at 322-23, f.11 (emphasis in original). Applying the logic of *Wentwood Woodside* to this case,[3] we recognize that, although mortgage lenders are required to obtain and disclose flood zone determinations when making a loan, *see Duong v. Allstate Ins. Co.*, 499 F. Supp. 2d 700, 702 (E.D. La. 2007), there may be instances in which a lender does not know that a property has been designated as located within an SFHA through no fault of its own, arguably placing itself in violation of 42 U.S.C. § 4104a(a)(1) by failing to notify the purchaser of such designation without having violated any other provision of law.[4] We do not, for obvious reasons, believe that recognizing a state law claim which holds a lender liable for violating the requirements of 42 U.S.C. § 4104a(a)(1) despite the

---

3. We note that, unlike 42 U.S.C. § 4012a(e)(1), 42 U.S.C. § 4012a requires a mortgage lender to perform a flood zone determination when it makes a loan. *See* 42 U.S.C. § 4012a (2007); *Duong*, 499 F. Supp. 2d at 702 (E.D. La. 2007); *Lukosus v. First Tenn. Bank Nat'l Ass'n*, No. 02-84, 2003 U.S. Dist. LEXIS 11941, 2003 WL 21658263 (W.D. Va. 2003); *Cruey v. First American Flood Data Services, Inc.*, 174 F. Supp. 2d 525, 527 (E.D. Ky. 2001) (stating that "[i]n essence, the Act provides that lending institutions subject to federal regulation may not make loans for improved real estate without insuring that such loans are secured by flood insurance in an amount at least equal to the outstanding balance of the loan").

4. Something of that nature appears to have occurred in *Ford*, 2006 U.S. Dist. LEXIS 74350, in which First American, "a company that provides flood zone determinations for lenders," failed "to correctly determine that the Property was located in an SFHA[.]" *Id.* The lender merely received and relied upon First American's determination. *Dollar v. Nationsbank of Georgia, N.A.*, 244 Ga. App. 116, 117, 534 S.E.2d 851, 853 (2000), provides another example, in which Albany Real Estate Services, Inc., appraised a residence for NationsBank, the lender, and determined that whether the residence was located in a flood hazard zone was "too close to call."

perfectly-understandable absence of any knowledge that the property in question was located in a flood plain would be appropriate.

Secondly, treating 42 U.S.C. § 4104a(a)(1) as creating an independent state law duty would have the practical effect of recognizing an implied private right of action under that statute in all but name. Like other courts that have considered this approach,[5] we believe that it would inappropriately circumvent the widely-accepted understanding that Congress did not intend to create a federal private right of action under 42 U.S.C. § 4104a(a)(1) to directly utilize that statutory provision as the basis for a state law claim. As a result, we believe that a state law claim of the type that Plaintiffs have sought to assert against Defendant, if any, must rest on a legal duty arising under one or more provisions of state law totally independent of 42 U.S.C. § 4104a(a)(1).

In determining whether North Carolina law recognizes a legal duty that might be applicable to Plaintiffs' claim against Defendant, we must, of necessity, keep in mind the basic thrust of Plaintiffs' claim. As described in the complaint, Defendant's conduct amounted to more than a negligent failure to notify Plaintiffs that the property in question was located in a designated flood plain in violation of 42 U.S.C. §4104a(a)(1). On the contrary, Plaintiffs claim that Defendant actively and intentionally withheld the information that the property

5. *See Ford*, 2006 U.S. Dist. LEXIS 74350 (holding that "any duty First American owed to Plaintiff, either from the contract between First American and USAA or from an ordinary negligence standard, would have arisen from the Act, a breach of which would violate the Act[,]" and because "Plaintiff's claims are based directly on alleged violations of the Act[,]" they may not be maintained); *Lehmann v. Arnold*, 137 Ill. App. 3d 412, 484 N.E.2d 473, 481(1985) (ruling that legislative intent and federalism concerns prohibit implied state law claims for Act violations); *R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n*, 315 N.W.2d 284, 290 (1982) (refusing to recognize an implied state law cause of action for a violation of the Act, reasoning that separation of powers and federalism concerns militate against utilizing a federal statute to establish the standard of care in a negligence action when the statute allows no express or implied private right of action); *Pippin v. Burkhalter*, 276 S.C. 438, 279 S.E.2d 603, 604 (1981) (holding that there can be no implied right of action in favor of the purchaser under the Act because it was intended to protect a class of loans rather than purchasers); *Jack v. City of Wichita*, 23 Kan. App. 2d 606, 933 P.2d 787, 793 (1997) (holding that the plaintiffs' multiple negligence-based claims against a number of defendants, including the mortgage company, the land surveyor, and the City of Wichita, could not be maintained because the "the weight of authority is that the federal statutes establishing the National Flood Insurance Program do not create a duty which would support a claim for negligence"); *Callahan v. Country Wide Home Loans, Inc.*, 20 Fla. L. Weekly Fed. D 227 (2006) (holding that "[o]ther than its violation of the NFIA, [the plaintiff] has not alleged any basis for a duty towards her on the part of Countrywide[,]" and for that reason, the plaintiff's complaint did "not state a cause of action against Countrywide for negligence.").

lay in a flood plain—including retention of surveys and certifications that contained relevant information and affirmative obstruction of Plaintiffs' access to important information—in order to induce Plaintiffs to purchase the property.

Assuming that Plaintiffs are able to establish the factual validity of these allegations, we believe that they have alleged conduct on the part of Defendant sufficient to establish a violation of a legal duty established under North Carolina state law independent of 42 U.S.C. § 4104a(a)(1). More particularly, we believe the General Assembly intended to prohibit such conduct through N.C. Gen. Stat. § 53-243.11, a provision of the Mortgage Lending Act. N.C. Gen. Stat. § 53-243.11 provides, in pertinent part, as follows:

> In addition to the activities prohibited under other provisions of this Article, it shall be unlawful for any person in the course of any mortgage loan transaction:
>
> (1) To misrepresent or conceal the material facts or make false promises likely to influence, persuade, or induce an applicant for a mortgage loan or a mortgagor to take a mortgage loan, or to pursue a course of misrepresentation through agents or otherwise.
>
> (8) To engage in any transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person, in connection with the brokering or making of, or purchase or sale of, any mortgage loan.

N.C. Gen. Stat. § 53-243.11(1) and (8) (2007). Although N.C. Gen. Stat. § 53-243.11 does not directly address the specific set of factual circumstances present in this case, we conclude that this statutory provision was intended to protect buyers against the sort of activity that is alleged to have occurred here.

In reaching this conclusion, we note that the relevant statutory language expressly prohibits "misrepresent[ation] or conceal[ment] [of] the material facts . . . likely to influence, persuade, or induce an applicant for a mortgage loan or a mortgagor to take a mortgage loan[.]" N.C. Gen. Stat. § 53-243.11(8). According to Plaintiffs' complaint, Defendant "misrepresented that the Property was not in a[n] SFHA;" claimed "that it had no knowledge prior to the closing that the Property was located in a[n] SFHA;" and "subsequently engaged in a practice and course of business of covering up the fact that it

did have knowledge that the Property was located in a[n] SFHA prior to the closing in an effort to prevent the Guytons . . . from discovering its deception." Assuming that Defendant did, in fact, engage in the conduct described in Plaintiffs' complaint, Defendant would have clearly violated N.C. Gen. Stat. § 53-243.11. As a result, there is ample basis in North Carolina law, considered without regard to 42 U.S.C. § 4104a(a)(1), for concluding that Defendant would have violated a legal duty owed to Plaintiffs if it acted as described in Plaintiffs' complaint.[6]

### 2: Federal Preemption

Having concluded that the NFIA does not foreclose the possibility that a party is entitled to maintain a state law cause of action stemming from a set of facts that would also constitute a violation of 42 U.S.C. § 4104a(a)(1) and that North Carolina law recognizes a duty that might be implicated by Defendant's alleged conduct, we next address the question of whether Plaintiffs' claims are nonetheless pre-empted by 42 U.S.C. § 4001, *et seq.*, to the extent that the answer to this question is not inherent in our analysis of the NFIA as set out above. Based upon a careful review of the applicable legal materials, we conclude that Plaintiffs' claims are not preempted by federal law.

Federal law can preempt state law on the basis of three different legal theories: express preemption, field preemption, and conflict preemption. *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 115, 120 L. Ed. 2d 73, 95 (1992). Express preemption requires "explicit pre-emptive language." *Gade*, 505 U.S. at 115, 120 L. Ed. 2d at 95, Souter, J., dissenting (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 203, 75 L. Ed. 2d 752 (1983)). "Field pre-emption is wrought by a manifestation of congressional intent to occupy an entire field such that even without a federal rule on some particular matter within the field, state regulation on that matter is pre-empted, leaving it untouched by either state or federal law." *Gade*, 505 U.S. at 115, 120 L. Ed. 2d at 95. Conflict preemption exists when compliance with both state and federal requirements is impossible, or "where state law

---

6. To be absolutely clear, because we hold that the legal duty upon which Plaintiff seeks to rely does not depend on an alleged violation of 42 U.S.C. § 4104a(a)(1), we are definitely *not* implying a private right of action pursuant to 42 U.S.C. § 4104a(a)(1) of any type in this case, and have not, for that reason, addressed the four-factor test for determining when a court may imply a private cause of action from a federal statute. *See Cort v. Ash*, 422 U.S. 66, 45 L. Ed. 2d 26 (1975).

stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 L. Ed. 2d 65, 74 (1990). Whether federal law preempts state law under any of these theories is essentially a question of Congressional intent. *N.W. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509, 103 L. Ed. 2d 509, 527 (1989).

Federal courts have concluded that the NFIA does not expressly or impliedly preempt state law claims, *see Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 734 (E.D.N.C. 2000); *Till*, 653 F.2d at 155 f.2, on the basis of determinations that Congress did not expressly declare that state common law claims are preempted by the NFIA or pervasively regulate the field of flood insurance. *See, e.g., Bleecker*, 130 F. Supp. 2d at 735 (stating that "[s]tripping insurance claimants of protections offered by state law from the tortious conduct of insurers would leave a gapping hole in the flood insurance field which Congress did not intend"); *see also Peal*, 212 F. Supp. 2d at 514 (stating that "[t]he vast majority of courts considering [the] language [of the Act] have concluded that it does not expressly preempt state law causes of action arising from claims handling[,]" and, "[a]s with express preemption, most courts have declined to find field preemption in the flood insurance context . . . [because] Congress did not pervasively regulate the field of flood insurance"); *see also Studio Frames, Ltd. v. Vill. Ins. Agency, Inc.*, 2003 U.S. Dist. LEXIS 5450 (D.N.C. 2003) (stating that "[t]he majority of courts that have addressed the issue of extra-contractual claim preemption and flood insurance have decided that express preemption and field preemption are not applicable).[7] As a result of the absence of expressly preemptive language in the NFIA and our belief that the NFIA does not regulate the flood insurance arena so completely as to exclude all state regulation, we conclude that the NFIA does not expressly preempt, or preempt through field preemption,

---

7. A more persuasive argument may be made for field pre-emption in the context of claims arising under the FEMA-created WYO (Write-Your-Own) insurance program, which are, in fact, heavily regulated. *See Studio Frames*, 2003 U.S. Dist. LEXIS 5450 (stating that "the majority of courts who have considered the preemption issue have concluded that WYO insurers should not be subject to potential tort liability, such as bad faith or unfair and deceptive trade practices, for their conduct in the handling of claims"). *Studio Frames*, 2003 U.S. Dist. LEXIS 5450 (citing *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943 (6th Cir. 2002) (discussing cases); *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 129 F. Supp. 2d 1024 (S.D. Tex.2001); *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 513, 522-23 (D.N.J. 2000)). Since Plaintiffs' claims do not arise from a transaction conducted under the WYO program, we need not decide whether state law claims are preempted in the WYO context.

civil actions against lenders arising in the flood insurance context based on state common law.

Finally, we address whether state law claims are barred by the doctrine of conflict preemption. Conflict preemption comes in two different forms. "The first is found when compliance with both state and federal law is impossible, [and] the second when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " *Gade*, 505 U.S. at 115, 120 L. Ed. 2d at 95 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581 (1941)). "The legislative history of [the] NFIA [has been interpreted to] suggest[] that Congress intend[ed] to preserve [in some instances] a plaintiff's right to obtain tort relief in state courts." *Bleecker*, 130 F. Supp. 2d at 734. "The legislative history behind section [42 U.S.C. § 4053] states that while claimants may file lawsuits in federal courts, claimants can "also avail themselves of legal remedies in State courts." *Bleecker*, 130 F. Supp. 2d 726, 734 (citing H. Rep. No. 90-1585, reprinted in 1968 U.S.C.C.A.N. 2873, 3022). After a thorough examination, we conclude that neither the relevant statutory nor regulatory provisions provide a clear indication that Congress intended to preempt all state law claims against lenders arising in the flood insurance context. *Bleecker*, 130 F. Supp. 2d 726, 734.

In considering the conflict preemption issue, we believe that Plaintiffs' claims against Defendant are distinguishable from the overwhelming majority of NFIA-based preemption decisions: Plaintiffs here have asserted claims against the lender, not a WYO flood insurer, while the majority of cases in which state law claims have not been allowed to go forward involve factual scenarios in which plaintiffs assert claims against a FEMA-created WYO insurer or other flood insurer subject to thorough regulation under the NFIA. This fact alone allows the possibility of a lender's compliance with both state and federal law, because the applicable provisions of state law do not " 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *Gade*, 505 U.S. at 115, 120 L. Ed. 2d at 95. In fact, we recognize that Plaintiffs' claims tends to further the Congressional objective of requiring lenders to notify purchasers if properties they are proposing to buy lie in designated flood plain areas by providing lenders with an additional incentive to do so. Since Congress has not provided a federal remedy for conduct by private lenders that would constitute a violation of 42 U.S.C. § 4102(a) outside the WYO context, a decision that state law claims such as those asserted by Plaintiffs in this case are preempted would effec-

tively immunize private lenders from any injury sustained by a purchaser no matter how egregious the lender's conduct may have been. We do not believe that Congress intended such a result. As a result, we hold that Plaintiffs' right to assert otherwise proper state law causes of action are not pre-empted by 42 U.S.C. § 4001, *et seq.*

### B. Sufficiency of Plaintiff's Complaint to State Recognized State Law Claims for Relief

**[4]** We next address whether Plaintiffs' complaint states a claim for relief under some recognized legal theory sufficient to withstand Defendant's motion for dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). As a result of the fact that Defendant has not contended on appeal that the complaint fails to state a claim for fraud or unfair and deceptive practices in the event that Defendant's alleged conduct implicates a duty to disclose arising under North Carolina law independent of the relevant provisions of the NFIA and the fact that our review of Plaintiffs' complaint indicates that they have adequately stated claims for fraud and unfair and deceptive practices, we hold that these portions of the complaint are sufficient to withstand a dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

We do not, however, reach the same conclusion with respect to Plaintiff's negligent misrepresentation claim. Even though Defendant has not argued on appeal that Plaintiffs failed to adequately allege a negligent misrepresentation claim arising exclusively under North Carolina law, we are still compelled to address this issue given the fact that the trial court's order failed to specify any particular grounds for concluding that Plaintiff's complaint was subject to dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

"[T]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds,* 329 N.C. 646, 407 S.E.2d 178 (1991); *see also Hudson-Cole Dev. Corp. v. Beemer,* 132 N.C. App. 341, 511 S.E.2d 309 (1999). As we have already noted, Defendant had a duty to disclose material information to Plaintiffs pursuant to N.C. Gen. Stat. § 53-243.11(1) and (8).

In their complaint[8], Plaintiffs make the following allegations in support of their negligent misrepresentation claim:

37. Pursuant to N.C. Gen. Stat. § 53-243.11(1), Defendant FM Lending owed a duty to the Guytons to refrain from misrepresenting or concealing material facts likely to influence, persuade or induce the Guytons to enter into a mortgage loan agreement with it.

38. Pursuant to N.C. Gen. Stat. § 53-243.11(8), Defendant FM Lending owed a duty to the Guytons to refrain from engaging in any transaction, practice or course of business that was not in good faith or fair dealing or that constituted a fraud upon the Guytons in connection with the making of any mortgage loan.

39. In direct violation of these duties, Defendant FM Lending misrepresented that the Property was not in a[n] SFHA and, further, misrepresented that it had no knowledge prior to the closing that the Property was located in a[n] SFHA.

40. In direct violation of these duties, Defendant FM Lending subsequently engaged in a practice and course of business of covering up the fact that it did have knowledge that the Property was located in a[n] SFHA prior to the closing in an effort to prevent the Guytons, the Commissioner and this Court from discovering its deception.

41. Absent Defendant FM Lending's statutory violations, the Guytons would have: (a) delayed the closing and investigated further; (b) decided to forego purchasing the Property; (c) refrained from entering into a loan agreement with Defendant FM Lending; and[/]or (d) renegotiated the purchase price of the Property based upon the fact that it was located in a[n] SFHA.

Taking the foregoing allegations as true, we believe that Plaintiffs have failed to sufficiently allege a claim for negligent misrepresentation. Although Plaintiffs have sufficiently alleged that the Mortgage Lending Act creates a duty of care, independent of 42 U.S.C. § 4104a(a)(1), requiring disclosure of information that property to be purchased is located in a flood plain, and that Plaintiffs justifiably

---

8. In addition to the material quoted in the text, Plaintiffs' complaint also sets out the basic factual material laid out in the factual statement that appears at the beginning of the opinion in support of each of the claims for relief that we discuss in the text.

relied to their detriment on Defendants' omissions, Plaintiffs have failed to sufficiently allege an unintentional failure to act in a manner inconsistent with the applicable standard of care or that the provision of information, upon which Plaintiffs had reasonably relied had not been prepared with reasonable care. By alleging that Defendant acted intentionally without ever advancing an alternative allegation that Defendant acted unintentionally or negligently, Plaintiffs have simply failed to state a claim for negligent misrepresentation (as compared to a claim for fraud). As a result, while we believe that Plaintiffs have adequately stated claims for fraud and unfair and deceptive practices, we conclude that Plaintiffs' complaint does not state a claim for negligent misrepresentation sufficient to survive a dismissal motion lodged pursuant to under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

### Conclusion

Thus, for all of these reasons, we conclude that the trial court erred by granting Defendant's dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), with respect to Plaintiffs' fraud and unfair and deceptive practice claims. However, we also conclude that the trial court appropriately dismissed Plaintiffs' negligent misrepresentation claim. In reaching this conclusion, we are heavily influenced by the applicable standard of review, which requires us to treat the allegations of Plaintiffs' complaint as true and to disregard the extent to which Plaintiffs will actually be able to prove the allegations that they have made. Needless to say, the extent to which the Plaintiffs are actually able to prove the conduct that they have alleged will have a significant effect on whether this case survives any motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56, or for a directed verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50, that Defendant ultimately chooses to pursue. At this point, however, we believe that Plaintiffs have advanced allegations sufficient to survive a dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) with respect to its fraud and unfair and deceptive practices claims. As a result, we reverse in part the trial court's order granting Defendant's motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and remand this case to the trial court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED and REMANDED IN PART.

Judges WYNN and HUNTER, Robert C. concur.