DILLON, Judge.
 

 Plaintiffs are owners of residential condominiums in Beaverdam Run (the "Community"), located in Buncombe County. Plaintiffs brought this action seeking a declaration that the Community's owners' association, Beaverdam Run Condominium Association (the "Association"), is required to maintain flood insurance for its buildings located in a flood zone. The trial court entered an order granting summary judgment in favor of the Association and denying Plaintiffs' request for declaratory judgment. For the following reasons, we reverse and remand for action consistent with this opinion.
 

 I. Background
 

 The Association has a board of directors elected by the owners of units in the Community and is governed by a declaration (the "Declaration"). The Community consists of sixty-six (66) buildings. Five of these buildings are located within a flood zone as designated by the Federal Emergency Management Agency ("FEMA"). Each Plaintiff owns a unit in one of these five buildings.
 
 [1]
 

 From approximately 2006-2012, the Association maintained flood insurance on each of the five buildings containing Plaintiffs' units. In 2012, the Association decided not to renew the flood insurance policy, citing concerns regarding cost and the allocation of the expense among the other members of the Association.
 
 [2]
 
 The Association notified all owners in the Community of its decision not to renew the flood insurance policy in a detailed letter, in accordance with the terms of the Declaration. The Association declined Plaintiffs' subsequent requests that the Association resume purchasing and maintaining flood insurance on the five buildings.
 

 In September 2015, Plaintiffs filed a complaint seeking a declaratory judgment from the trial court regarding the Association's obligation to maintain flood insurance. The Association filed an answer and a motion for summary judgment.
 

 In March 2017, the trial court entered an order granting the Association's motion for summary judgment and dismissing Plaintiffs' complaint with prejudice. Plaintiffs timely appealed.
 

 II. Standard of Review
 

 We review a trial court's grant of summary judgment
 
 de novo
 
 .
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56.
 

 III. Analysis
 

 Plaintiffs' sole argument on appeal is that the trial court erred in granting the Association's motion for summary judgment, contending that the Association does, in fact, have a duty to maintain flood insurance in Plaintiffs' buildings.
 

 *716
 
 A. The Condominium Act and the Declaration
 

 Resolution of this appeal requires examination of
 
 both
 
 Section 47C-3-113 of the North Carolina Condominium Act (the "Condominium Act")
 
 and
 
 the Declaration.
 

 Section 47C-3-113 of the Condominium Act requires a residential condominium association to maintain insurance "against all risks of direct physical loss commonly insured against," so long as the insurance is "available," specifically providing as follows:
 

 [T]he association shall maintain,
 
 to the extent available
 
 :
 

 (1) Property insurance on the common elements insuring against all risks of direct physical loss
 
 commonly insured against
 
 including fire and extended coverage perils. ...
 

 N.C. Gen. Stat. § 47C-3-113(a) (emphasis added).
 
 [3]
 
 The statute further provides that "[i]f the insurance described in subsection (a) ... is not reasonably available, the association promptly shall cause notice of that fact to be [communicated] ... to all unit owners.
 
 The declaration may require the association to carry any other insurance
 
 , and the association ... may carry any other insurance it deems appropriate to protect the association or the unit owners." N.C. Gen. Stat. § 47C-3-113(c) (emphasis added).
 

 The Declaration contains two sections which govern the Association's purchase of insurance: Section 8.1 provides generally that the Association is to maintain insurance coverage in accordance with
 
 N.C. Gen. Stat. § 47
 
 C-3-113 to the extent that such insurance is "reasonably available," and Section 8.2 addresses
 
 property
 
 insurance specifically and provides that the Association is to maintain property insurance against "all risks of direct physical loss." Specifically, these provisions state as follows:
 

 Section 8.1
 

 Coverage
 
 . To the extent
 
 reasonably available
 
 , the Board shall obtain and maintain insurance coverage, as a common expense in accordance with Section 47C-3-113 of the Condominium Act and as set forth in this Article. If such insurance is not reasonably available, and the Board determines that any insurance described herein will not be maintained, the Board shall cause notice of that fact to be hand-delivered or sent prepaid by United States mail to all Unit Owners at their respective last known addresses.
 

 Section 8.2
 

 Property and Casualty Insurance
 
 . The Association shall procure and maintain property and casualty insurance on the Common Elements and Units insuring against
 
 all risks of direct physical loss
 
 , including fire and extended coverage, for and in an amount equal to the full replacement value of all structures within the Condominium, including all personal property and improvements thereto except for such personal property that is contained in but not attached to the Unit and is owned by the Owner personally.
 

 (Emphasis added). The Declaration also explicitly provides that in the event of a conflict between the terms of the Declaration and the Condominium Act, "the provisions of the [Condominium Act] shall control."
 

 B. The Association's Obligation to Maintain Flood Insurance
 

 For the reasons below, we conclude that the Association is obligated by the Declaration and the Condominium Act to maintain insurance against
 
 all risks of direct physical loss
 
 which are
 
 commonly insured against
 
 , to the extent that such insurance is
 
 reasonably available
 
 . We further conclude that flood is a risk of direct physical loss which is commonly insured against for residential buildings located in a FEMA-designated flood zone. Accordingly, we conclude that the Association has an obligation to provide flood insurance for the Community's buildings located within the FEMA flood zone each year when such insurance is reasonably available.
 

 1. "Risk of Direct Physical Loss"
 

 We conclude that damage by flood is
 
 *717
 
 a "risk of direct physical loss" to property.
 
 [4]
 
 Indeed, our Supreme Court has instructed that in the context of insurance policies, "[t]he term 'all risks' is
 
 not
 
 to be given a restrictive meaning."
 
 Avis v. Hartford Fire Ins. Co.
 
 ,
 
 283 N.C. 142
 
 , 146,
 
 195 S.E.2d 545
 
 , 546 (1973) (emphasis added).
 

 The Association essentially argues that (1) the phrase "all risks of direct physical loss" is limited in the Declaration by the phrase which follows, "including fire and extended coverage [perils]" and (2) the risk of flood is
 
 not
 
 a risk of fire or a risk commonly understood as an "extended coverage" peril. The Association relies heavily on an affidavit from the attorney who drafted the Declaration. In the affidavit, the attorney essentially stated that flood is not an "extended coverage peril" and that the peril of flood is not "commonly insured against in property and casualty insurance policies."
 
 [5]
 
 However, the question is not whether the risk of flood is commonly insured against only
 
 in property and casualty insurance policies
 
 ; rather, the question is whether the phrase "all risks of direct physical loss" is limited to only risks associated with fire and extended coverages.
 

 We conclude that the phrase "all risks of direct physical loss" is not limited by the phrase "including fire and extended coverage [perils]." Had the intent been to limit the Association's obligation to maintain
 
 only
 
 those coverages contained in a standard fire and extended coverages policy, the Community's declarant could have stated as such. Our Supreme Court has consistently noted that the word "including" indicates an intent to enlarge, not limit, a definition.
 
 See
 

 Polaroid Corp. v. Offerman
 
 ,
 
 349 N.C. 290
 
 , 300-01,
 
 507 S.E.2d 284
 
 , 292 (1998),
 
 abrogated on other grounds by
 

 Lenox, Inc. v. Tolson
 
 ,
 
 353 N.C. 659
 
 ,
 
 548 S.E.2d 513
 
 (2001) ;
 
 N.C. Turnpike Auth. v. Pine Island, Inc.
 
 ,
 
 265 N.C. 109
 
 , 120,
 
 143 S.E.2d 319
 
 , 327 (1965) ("The term 'includes' is ordinarily a word of enlargement and not of limitation.");
 
 see also
 

 Samantar v. Yousuf
 
 ,
 
 560 U.S. 305
 
 , 317,
 
 130 S.Ct. 2278
 
 ,
 
 176 L.Ed.2d 1047
 
 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive.").
 

 2. "Commonly Insured Against"
 

 We further hold that "flood" is a risk of direct physical loss that is "commonly insured against" for residential buildings located in flood zones. FEMA is responsible for administering the National Flood Insurance Program ("NFIP"), which was created by the United States Congress "in order to make flood insurance available on reasonable terms and conditions to those in need of such protection."
 
 Guyton v. FM Lending Services, Inc.
 
 ,
 
 199 N.C. App. 30
 
 , 37,
 
 681 S.E.2d 465
 
 , 471 (2009) (internal marks omitted) (citing
 
 42 U.S.C. § 4001
 
 ). Plaintiffs' response opposing the Association's motion for summary judgment included documentation from the NFIP showing that from 2006-2015, the program administered over five million flood insurance policies in each calendar year. At the time of the writing of this opinion, FEMA's flood policy statistics show that there are approximately 134,126 flood policies in force in the State of North Carolina.
 
 [6]
 
 Approximately
 
 *718
 
 1,062 of these policies are in force in Buncombe County, where the Community is located.
 

 FEMA's Flood Insurance Manual details the methods of insuring residential condominiums. The manual provides that only a condominium's association may purchase flood insurance coverage on a residential building and its contents-individual unit owners are not eligible to purchase flood insurance through the NFIP. And due to federal lending regulations, owners of properties in special flood hazard areas are required to purchase flood insurance as a condition of receiving a federally backed mortgage.
 
 See
 

 42 U.S.C. § 4012
 
 . In practice, this means that any time a buyer purchases a property in North Carolina located in a special flood hazard area by way of a mortgage from a federally regulated lender, the property generally must be protected by a flood insurance policy.
 
 See
 
 U.S.C. § 4012(b)(2) ("A Federal agency lender may not make ... any loan secured by improved real estate ... in an area that has been identified [ ] as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act[.]"). At least one Plaintiff in this action has been unable to sell her unit, despite having an accepted offer to purchase, because the contract was dependent on the buyers obtaining a loan and they were unable to do so because the property was not covered by a flood insurance policy.
 
 [7]
 

 3. "Reasonably Available"
 

 Finally, for the following reasons, we hold that the Association's obligation to maintain flood insurance coverage on the Community's buildings located in a FEMA flood zone is not absolute for all time. Rather, we hold that the Association only has the obligation so long as flood insurance is "reasonably available."
 

 The Declaration provides that the Association is required to obtain insurance coverage
 
 only
 
 to the "extent
 
 reasonably available
 
 ."
 

 The Declaration also states that the Association shall obtain insurance coverage "in accordance with Section 47C-3-113 of the Condominium Act[.]" The Condominium Act provides that an association "shall maintain [insurance],
 
 to the extent available
 
 ." N.C. Gen. Stat. § 47C-3-113(a)(1). In interpreting this statutory provision, we are guided by the Official Comment to the statute, included with the printing of the Condominium Act.
 
 See
 

 Miller v. First Bank
 
 ,
 
 206 N.C. App. 166
 
 , 171,
 
 696 S.E.2d 824
 
 , 827-28 (2010) (stating that "commentary to a statutory provision can be helpful in some cases in discerning legislative intent[,]" and where comments are "included with the printing of the statute[,] ... [they are] relevant in construing the intent of the statute");
 
 see also
 

 Crowder Const. Co. v. Kiser
 
 ,
 
 134 N.C. App. 190
 
 , 206,
 
 517 S.E.2d 178
 
 , 189 (1999) ("Consistent with the practice of our Supreme Court, we have given the Commentary 'substantial weight[.]' "). The Official Comment to N.C. Gen. Stat. § 47C-3-113 clarifies that "[s]ubsections (a) and (b) provide that the required insurance must be maintained
 
 only to the extent reasonably available
 
 . This permits an association to comply with the insurance requirements
 
 even if
 
 certain coverages are unavailable or
 
 unreasonably expensive
 
 ." N.C. Gen. Stat. § 47C-3-113 (official comment).
 

 IV. Conclusion
 

 Flood is a hazard which is commonly insured against for residential properties located in a FEMA flood zone. Whether flood continues to be a hazard "commonly insured against" and whether such insurance is "reasonably available" are to be determined by the Association in the course of its diligent and good-faith execution of its duties.
 
 See
 
 N.C. Gen. Stat. § 47C-3-103 ("In the performance of their duties, the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent [persons] would exercise under similar circumstances in like positions."). We note
 
 *719
 
 that in the event the Association, in any given year, determines in the affirmative to both questions, the Declaration requires that such insurance be maintained
 
 as a common expense
 
 . Indeed, the buildings are owned by
 
 all
 
 of the unit owners in common.
 

 In the present case, the issue of whether the Association made the proper determination based on the circumstances of the Community in any given year is not before us. Rather, Plaintiffs requested a declaratory judgment to resolve the issue of whether, in general, the Association is obligated to maintain flood insurance on any of its buildings located in a flood plain.
 

 Accordingly, we hold that the trial court erred in granting the Association's motion for summary judgment. Although there was no genuine issue of material fact, the Association was
 
 not
 
 entitled to judgment in its favor as a matter of law. Therefore, we reverse and remand for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges STROUD and INMAN concur.
 

 [1]
 

 There are ten individuals who own units in the five buildings. Nine of the ten individuals are plaintiffs in this action. Seven of the ten plaintiffs are parties on appeal.
 

 [2]
 

 The Association also declined to renew insurance policies protecting against mechanical equipment breakdown, earthquake, and acts of terrorism.
 

 [3]
 

 Subsection (d) mandates that "[i]nsurance policies carried pursuant to subsection (a) must provide that [ ] [e]ach unit owner is an insured person under the policy with respect to liability arising out of his [or her] interest in the common elements or membership in the association[.]" N.C. Gen. Stat. § 47C-3-113(d).
 

 [4]
 

 The standard FEMA flood insurance policy covers a "residential condominium building" for "
 
 direct physical loss
 
 by or from flood to [the] insured property[.]"
 
 Residential Condominium Building Association Policy
 
 , FEMA National Flood Insurance Program,
 
 available at
 
 https://www.fema.gov/media-library-data/1449522834627-6207ff14ab3d19b2a8d43b3aa6f6607d/F144_RCBAP_SFIP_102015.pdf (emphasis added).
 

 [5]
 

 We note that to the extent the trial court's order relied upon the attorney's legal opinion in concluding that the Association's motion for summary judgment should be granted, that reliance was misplaced. It is the trial court's duty to resolve issues of law.
 

 [6]
 

 Policy Statistics Country-Wide
 
 , FEMA National Flood Insurance Program,
 
 available at
 
 http://bsa.nfipstat.fema.gov/reports/1011.htm. We take judicial notice of these statistics pursuant to Rule 201 of the North Carolina Rules of Evidence. N.C. R. Evid. 201 ("A judicially noticed fact must be ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.");
 
 see also
 

 State v. Wright
 
 ,
 
 290 N.C. 45
 
 , 51-52,
 
 224 S.E.2d 624
 
 , 628 (1976) (taking judicial notice of statistics on the operation of North Carolina's superior courts compiled by the Administrative Office of the Courts);
 
 State v. Southern Ry. Co.
 
 ,
 
 141 N.C. 846
 
 ,
 
 54 S.E. 294
 
 (1906) (taking judicial notice of the rules and regulations adopted by the United States Department of Agriculture).
 

 [7]
 

 Of course, this requirement might not affect a cash buyer or a mortgage issued by a private mortgage company which is
 
 not
 
 ultimately sold on the secondary market to a federally regulated lender.